# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**F.V. STEEL AND WIRE COMPANY,**
             **Appellant,**

        **v.**                                    **Case No. 05C1297**

**HOULIHAN LOKEY HOWARD &**
**ZUKIN CAPITAL, L.P.,**
                **Appellee.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 158(a), F.V. Steel and Wire Company ("debtors") appeal the bankruptcy court's decision approving the final fee application of Houlihan, Lokey, Howard & Zukin Capital L.P. ("Houlihan").

### I.  FACTS AND BACKGROUND

In February 2004, the debtors sought protection under Chapter 11 of the Bankruptcy Code.  The case became possibly the largest Chapter 11 case ever handled in this district.  The trustee appointed an Official Committee of Unsecured Creditors ("the committee"), which interviewed five potential financial advisors and ultimately chose Houlihan.  On March 18, 2004, the committee and Houlihan signed an engagement letter setting forth the terms of their agreement.  In exchange for financial analysis and valuation services, the committee agreed to pay Houlihan $80,000 a month plus a percentage of the "unsecured creditor recoveries" as a transaction fee. (Engagement Ltr. at 3.)  The engagement letter defined unsecured creditor recoveries as "the consideration received by all unsecured creditors in respect of their claims, including without limitations, cash, securities (debt or

equity) property or other interests or consideration." (Id.) The committee also agreed to seek an order authorizing it to employ Houlihan "pursuant to (and to the standard of review of) sections 328(a)[1] and 1103 of the Bankruptcy Code, the Bankruptcy Rules, applicable local rules and orders of the Bankruptcy Court"). (Id. at 4.)

Subsequently, the committee filed an "Application . . . for an Order Authorizing the Committee to Retain Houlihan . . . Pursuant to 11 U.S.C. §§ 328 & 1103" ("application"). (Application at 1.) The application stated that "the statutory predicates for the relief sought are sections 328 and 1103," (id.), that the committee would compensate Houlihan "subject to court approval, in accordance with section 328 & 330[2] of the Bankruptcy Code and pursuant to the Agreement," (id. at 4), and that "the fee structure is allowable and contemplated under section 328(a) of the Bankruptcy Code." (Id. at 5.)

The committee attached to the application a proposed order authorizing Houlihan's retention "pursuant to 11 U.S.C. §§ 328 and 1103," (April 21, 2004 Order at 1), and stating that "Houlihan's compensation is expressly subject to the provisions of the Bankruptcy Code, which provide that the Court may allow compensation agreed to in the engagement letter or described in the Application, if, in light of developments in the case, the terms of the compensation later prove improvident." (Id. at 3.) The court added language stating

---

[1]Section 328(a) authorizes a bankruptcy court to pre-approve the compensation of a professional retained in a bankruptcy proceeding. If a bankruptcy court pre-approves a professional's compensation pursuant to the statute, it may allow compensation different from the approved compensation only if the approved compensation proves to have been "improvident in light of developments not capable of being anticipated" at the time of approval.

[2]Section 330(a)(1)(A) provides that "subject to" § 328, a bankruptcy court may award "reasonable compensation" to a professional employed in a bankruptcy proceeding.

2

that "[a]ny and all compensation paid to Houlihan, including the Transaction Fee and the monthly advisory fee, is subject to the final approval of this Court," (Nov. 17, 2005 Mem. Decision at 4), and signed the order.

In October 2005, Houlihan filed its final fee application, which included a transaction fee of $2,066,540. The debtors objected to the transaction fee, arguing that in calculating it, Houlihan wrongly treated retiree recoveries as unsecured creditor recoveries. Houlihan responded that: (1) because § 328 governed its retention, the bankruptcy court could modify the pre-approved compensation arrangement only if it had proved improvident in light of developments that could not have been anticipated; and (2) in any case, it had properly calculated the transaction fee. The bankruptcy court rejected Houlihan's first argument, stating that it "would strip the court of the ability to review the reasonableness of professional fee requests" (id.), and it reviewed Houlihan's fee application for reasonableness. However, the court concluded that Houlihan had properly treated retiree recoveries as unsecured creditor recoveries and that the fee was reasonable. (Id. at 5.)

I will state additional facts in the course of the decision.

## II. DISCUSSION

I review a fee award by a bankruptcy court under an abuse of discretion standard. In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir. 1994). I accept the bankruptcy court's factual findings unless they are clearly erroneous, Fed. R. Bankr. P. 8013; Matter of Excalibur Auto. Corp., 859 F.2d 454, 457 n.3 (7th Cir. 1998), and I review its legal conclusions de novo. Id. I first address whether the bankruptcy court reviewed Houlihan's request under the correct standard.

3

Generally, a bankruptcy court reviews a professional's fee application after the professional has provided services in the bankruptcy proceeding, and it conducts the review under § 330(a)(1)(A)'s reasonableness standard. However, as previously indicated, pursuant to § 328(a) a professional may obtain pre-approval of a compensation arrangement such that a bankruptcy court may subsequently modify the package only if its initial approval proved "improvident in light of developments not capable of being anticipated at the time." In re Fed. Mogul-Global, Inc., 348 F.3d 390, 397 (3d Cir. 2003); see also In re B.U.M. Int'l, Inc., 229 F.3d 824, 829 (9th Cir. 2000) (stating that "a bankruptcy court may not conduct a[n] . . . inquiry into the reasonableness of [a professional's] fees and their benefit to the estate if the court already has approved the professional's employment under 11 U.S.C. § 328"); In re Nat'l Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (stating that

> [u]nder . . . § 328 [a] professional may avoid . . . uncertainty by obtaining court approval of compensation agreed to with [a committee] . . . . Thereafter, that approved compensation may be changed only . . . 'if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions');

In re Benassi, 72 B.R. 44, 47 (D. Minn. 1987) (stating that "§ 330(a)(1) does not supplant § 328(a) and give the [bankruptcy] judge free reign to void a previously authorized employment agreement for a percentage fee"); 3 Collier on Bankruptcy § 328.03[1] (15th ed. rev. 2002) (stating that "[a] court may not revisit [its] prior determination as to the 'reasonableness' of an agreement previously approved [pursuant to § 328(a)] unless and until it determines that the terms and conditions proved to be 'improvident'").

4

Thus, a bankruptcy court must approve a professional's application for compensation either under the "improvident" standard of § 328(a) or the reasonableness standard of § 330(a)(1) – not both. See In re Barron, 225 F.3d 583, 586 (5th Cir. 2000). The Seventh Circuit's decision in In re Lyttons, 832 F.2d 395, 400 (7th Cir. 1987) is not to the contrary. The Lyttons court stated only that a bankruptcy court which approved a compensation arrangement under § 328 could subsequently modify it, not that it could do so under a standard other than that provided in § 328(a). Lyttons does not authorize a bankruptcy court that pre-approved a compensation arrangement under § 328(a) to subsequently review a request for compensation for reasonableness under § 330.

Whether a bankruptcy court can be said to have pre-approved a professional's request for compensation under § 328(a) depends on the documents governing the professional's retention. In In re Circle K Corp., 279 F.3d 669, 671 (9th Cir. 2002), the Ninth Circuit held that:

> unless a professional's retention application unambiguously specifies that it seeks approval under § 328, it is subject to review under § 330. As a matter of good practice, the bankruptcy court's retention order should likewise specifically confirm that the retention has been approved pursuant to § 328 so as to avoid any ambiguity. The absence of such a specific reference in the bankruptcy court's order, however, would not of itself automatically override the retention applications' invocation of § 328.[2]

> [2] Of course, a bankruptcy court is not compelled to accept a professional's employment under § 328 merely because the application cites that statutory provision. The bankruptcy court is free to make clear that it is only conditionally approving the professionals' retention application such that § 330 is applicable. Our point is merely that if a professional's retention application cites § 328 and the bankruptcy court's order otherwise makes clear that the retention has been approved pursuant to § 328, we will consider § 328 to apply even if the retention order does not specifically reference that section.

5

The Circle K court expressed its disagreement with the Fifth Circuit's decision in Donaldson, Lufkin & Jenrette Corp. v. National Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997), with respect to the question of how explicit the retention documents must be:

> There the court held that a professional had been employed pursuant to § 328 even though § 328 was not specified in the retention application and the bankruptcy court's order stated that '[t]he Court retains the right to consider and approve the reasonableness and amount of DLJ's fees on both an interim and final basis.' In this Circuit, unless a professional is unambiguously employed pursuant to § 328, its professional fees will be reviewed for reasonableness under § 330. To ensure that § 328 governs the review of a professional's fees, a professional must invoke the section explicitly in the retention application. Preferably, the retention order would specify that section as well.[5]
>
> [5] Once again, we encourage bankruptcy courts to identify clearly which statutory provision applies to a professional's retention. Of course, failure to cite either § 330 or § 328 is not fatal, as the context of the retention order should ordinarily make clear which provision is applicable.

I agree with the Ninth Circuit that a professional seeking to have her fees reviewed under § 328(a) should make sure that the engagement letter, the retention application and to the extent possible the retention order, specify that review under such section is intended. I also agree with the Ninth Circuit that even if the engagement letter and/or retention application expressly contemplate review under § 328(a), a bankruptcy court may in its retention order specify that it will review the fee application under § 330. However, if the retention documents indicate that review under § 328(a) is intended, a bankruptcy court may not review a fee application for reasonableness under § 330 unless it unambiguously states in the retention order that it intends to do so. A professional has a right to know the standard under which her fee application will be reviewed at the time she is retained.

6

In the present case, the engagement letter, the retention application and the retention order all expressly contemplated that the bankruptcy court would review Houlihan's compensation under the § 328(a) standard. The retention order stated in its title that the committee retained Houlihan pursuant to § 328 and further stated that the court could modify Houlihan's compensation arrangement only if it proved improvident in light of developments that could not have been anticipated. The bankruptcy court modified the retention order slightly but gave no indication that it intended to reject the § 328(a) standard of review in favor of the § 330 standard. The court did not delete the references to § 328(a) and did not add a reference to § 330. Rather, it merely added unremarkable language indicating that it had final approval over Houlihan's fee. Such language was insufficient to authorize the court to review Houlihan's compensation under § 330. If the court intended to reject § 328(a) review in favor of reasonableness review under § 330, it should have done so explicitly. Because it failed to do so, it could subsequently review Houlihan's fee application only under the improvident standard in § 328(a). By reviewing it for reasonableness under § 330, the court erred.[3]

Nevertheless, I will affirm the bankruptcy court's decision approving Houlihan's fee. I do so because if the bankruptcy court had reviewed Houlihan's fee application under the § 328(a) standard, it would have been required to approve it. This is so because the debtors did not show that the pre-approved compensation arrangement was "improvident in light of developments not capable of being anticipated at the time." § 328(a). The § 328(a) standard is a demanding one. See In re Yablon, 136 B.R. 88, 92 (Bankr. S.D.N.Y.

_____

[3]Both parties agree that the bankruptcy court should have reviewed Houlihan's fee application under the § 328(a) standard instead of reviewing it for reasonableness.

Case 2:05-cv-01297-LA   Filed 09/06/06   Page 7 of 11   Document 21

1992) (stating that "the requirement of 'improvidence in light of developments not capable of being anticipated at the time' makes it difficult, as a practical matter, for a court to vary the compensation even when it thinks that it was improvident at the outset") (quoting In re C & P Auto Trans., 94 B.R. 682, 686 n.5 (Bankr. E.D. Cal. 1998); see also In re Barron, 325 F.3d 690, 693 (5th Cir. 2003) (noting the limitations on bankruptcy courts' ability to revise pre-approved fee arrangements and stating that it is not enough that the developments that made the plan improvident were merely unforeseen, they had to have been incapable of being anticipated).

In the present case, the engagement letter called for Houlihan to base the transaction fee on a percentage of unsecured creditor recoveries, and the debtors argued that in calculating the fee, Houlihan should not have treated retirees as unsecured creditors. Thus, to prevail under the § 328(a) standard, the debtors had to establish that Houlihan's treatment of retirees as unsecured creditors was a development that could not have been anticipated and that it made the pre-approved compensation arrangement improvident. However, it could have been anticipated at the time of pre-approval that Houlihan might treat retirees as unsecured creditors. This is so because under the terms of the engagement letter, Houlihan was within its rights to do so.

Under New York law, which governs the engagement letter, a court interpreting a contract must determine the intent of the parties based on the language of the contract. Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 171 (N.Y. 2002). If the language is unambiguous, the court determines its meaning based on the document alone. W.W.W. Assoc. v. Giancontieri, 566 N.E.2d 639, 642 (N.Y. 1990). The bankruptcy court concluded, and I agree, that the language of the engagement letter was unambiguous. Such language

8

authorized Houlihan to calculate its fee based on the recoveries of "all unsecured creditors." (Engagement Ltr. at 3.) As the bankruptcy court stated, "the engagement letter does not limit the definition of general unsecured creditors to trade unsecured creditors. The engagement letter uses the language 'all unsecured creditors,' which is obviously broad and inclusive of every type of unsecured creditor." (Nov. 17, 2005 Mem. Decision at 4.)

The debtors argued that Houlihan should not have treated retiree claimants as unsecured creditors because under 11 U.S.C. § 1114, retiree claims are entitled to administrative priority prior to the effective date of a Chapter 11 reorganization plan. However, "the legislative history of § 1114, as well as its operation, reveals that the statute was designed to serve the limited role of providing retirees with representation in bankruptcy proceedings." Nelson v. Stewart, 422 F.3d 463, 473 (7th Cir. 2005). Section 1114 did not change the fact that under the Bankruptcy Code, retiree claims remain unsecured. The fact that such claims might be entitled to priority over other claims does not change their unsecured status.

For example, 11 U.S.C. § 507 sets forth the priority of distribution for unsecured claims. This priority list, however, means only that the Code "favors certain types of unsecured claims, . . . over other unsecured claims." W. Homer Drake, Chapter 11 Reorganization § 10:8 (2d ed. 2005) (emphasis added); see also In re Johnson, 901 F.2d 513, 516-17 (6th Cir. 1990) (stating that administrative expense claims are first priority unsecured claims) (emphasis added); In re R.J. Reynolds - Patrick County Mem'l Hosp., 305 B.R. 243, 244 (Bankr. W.D. Va. 2003) (stating that "claims in bankruptcy may be divided into three categories. They are secured claims, priority unsecured claims, and

9

general unsecured claims."). By giving retiree claims administrative priority, Congress did not remove them from the category of unsecured claims. See also 11 U.S.C. § 506(a), which defines secured versus unsecured claims and provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Retiree claims are not secured by a lien on property in which the estate has an interest as defined in § 506. For this reason also, they are unsecured claims. Finally, I note that the bankruptcy court found that in their disclosure statement, "the debtors themselves included the Retirees in the grouping of general unsecured creditors." (Nov. 17, 2005 Mem. Decision at 5.)

Thus, Houlihan's treatment of retiree claims did not make the pre-approved fee arrangement improvident. Moreover, such treatment could have been anticipated. On this point, the bankruptcy court correctly pointed out that:

> Before Houlihan's retention was approved by the court, the Debtors sought a clarification in the definition of 'Recoveries to Unsecured Creditors' with respect to the valuation of stock that might be part of the distribution to creditors. At the same time, the Debtors could have tried to limit the Transaction Fee to recoveries by trade creditors, but apparently the Debtors did not make this simple and logical request.

(Id.)

10

### III.  CONCLUSION

For the reasons stated,

**IT IS ORDERED** that the decision of the bankruptcy court is **AFFIRMED.**

Signed at Milwaukee, Wisconsin, this 6 day of September, 2006

/s_____
LYNN ADELMAN
District Judge

Case 2:05-cv-01297-LA   Filed 09/06/06   Page 11 of 11   Document 21